# Livingston *versus* Pittsburgh and Steubenville Railroad Company.

1. One partner cannot make himself the agent of his firm to subscribe stock to a railroad company—the building of railroads not being within the scope of the partnership.

2. To enable a railroad company to recover against a firm for stock subscribed by one of its partners, plaintiff must prove the assent of all the partners.

3. Where one partner subscribes, in the name of a firm, to the stock of a railroad company, if the other partner has knowledge of the subscription, and of the payments thereon by the firm, and does not dissent, it is strong evidence of assent, which, if given either before or after the subscription, ratifies it forever.

ERROR to the District Court of *Allegheny county*.

This was an action of *assumpsit*, brought by the Pittsburgh and Steubenville Railroad Company against Samuel Livingston, as the surviving partner of the firm of Samuel & Peter Livingston.

The charge of the court below, (WILLIAMS, A. J.,) states all the important facts and points of the case. It was as follows:

"This is an action to recover the instalments due and unpaid on 140 shares of stock alleged to have been subscribed to the capital stock of the Pittsburgh and Steubenville Railroad Company, by the late firm of S. & P. Livingston, together with the penalty of one per cent. per month from the time the said instalments, respectively, became due and payable.

"By an Act of Assembly, approved 24th day of March, 1849, entitled an Act to incorporate the Pittsburgh and Steubenville Railroad Company, Samuel Livingston and others were ap-

pointed 'commissioners to open books, receive subscriptions, and organize a company by the name, style and title of the "Pittsburgh and Steubenville Railroad Company,"' with power to construct a railroad, commencing 'on the Monongahela river, near Pittsburgh, and running in the direction of Steubenville, on the Ohio river, to a point on the Virginia State line,' subject to all the provisions and restrictions of an act regulating railroad companies, approved the 19th day of February, 1849. The capital stock of said company to consist of 16,000 shares, with the privilege of increasing the same to an amount sufficient to carry out the true intent and meaning of the act.

"It appears from the return of the commissioners, bearing date the 18th of July, 1851, and signed by Samuel Livingston, among others; that books were regularly opened for the purpose of receiving subscriptions, and that more than ten per cent. on the capital stock of said company, viz: 2263 shares were subscribed, and the sum of five dollars for each and every share so subscribed paid in by the persons subscribing therefor, among whom S. & P. Livingston are returned as having subscribed 140 shares.

"Letters patent, bearing date the 22d day of July, 1851, were issued to the subscribers of said stock, constituting them a body politic and corporate, in deed and in law, under the name of the 'Pittsburgh and Steubenville Railroad Company.' The stockholders met on the 21st of August, 1851, and elected a president and twelve directors. The first meeting of the board of directors took place on the 28th of August, 1851. Samuel Livingston, the defendant in this case, was elected one of the directors, and was present when the board first met and organized. And as the minutes of the company show, he was re-elected from year to year, and continued to attend the meetings of the board, and to act as a director until March, 1856.

"Peter Livingston died in September, 1855, and this action is brought against Samuel Livingston, as surviving partner of the firm of S. & P. Livingston. In addition to the fact that Samuel Livingston was elected and continued to act as a director of the company for a period of more than four years, the plaintiff's counsel contend that the tally-list, proxies, books of the company, and the parol evidence given in this case, show that both Samuel and Peter Livingston were present at the first meeting of the stockholders, and that they voted 140 shares of stock, standing on the books of the company, in the name of their firm, and that they paid the first instalment of $700 thereon, and a portion of the second; and that both Samuel and Peter, down to the period of the death of the latter, repeatedly, by their acts and declarations, recognized the fact that they were subscribers for 140 shares of the stock of the company; and that in conse-

quence of their said acts and declarations, as shown by the evidence, the defendant is estopped from denying his liability as a surviving member of the firm of S. & P. Livingston, for the stock in question.

" The defendant denies that he and his deceased brother ever made an *absolute subscription* to the stock of the company. He alleges that the subscription was conditional, and that he is not liable therefor, because the conditions on which the subscription was made, have not been fulfilled or complied with. The subscription alleged to have been made by S. & P. Livingston, and given in evidence by the defendant, is as follows:

" 'We, the undersigned, agree to pay to the Treasurer of the Pittsburgh and Steubenville Railroad Company, the sums set opposite our respective names, to the stock of said company; provided that no subscription shall be considered as due and valid until the sum of $200,000 shall have been *bonâ fide* subscribed on the books of the company, *and provided the road goes within half a mile of Florence.*' (Signed,) ' S. & P. Livingston, 140 shares, $7000.' The last proviso is not in the body of the subscription, but is written along the margin of the subscription book, and is proved by the testimony of two witnesses, to have been written before the subscription of S. & P. Livingston was made. The testimony of these witnesses is not contradicted or impeached. The jury will determine from the evidence whether the marginal proviso was written before or after the subscription was made.

" If the jury are satisfied that it was written before the subscription was made, two questions will then arise in regard to the subscription.

1. Has the first proviso or condition been fulfilled or complied with, as alleged by the plaintiff?

" This is a question of fact for the determination of the jury. I cannot instruct the jury that there is no evidence that $200,000 have been *bonâ fide* subscribed on the books of the company. The jury will determine the fact for themselves from the evidence. If they are satisfied that that amount of stock has been subscribed in good faith, then so far as respects this proviso, the subscription is valid and binding on the defendant, and the plaintiff may recover; but if the evidence does not satisfy the jury that the sum of $200,000 has been subscribed in good faith to the stock of the company, then the subscription would not be binding, and the plaintiff would not be entitled to recover.

" 2. Has the second proviso or condition been complied with, or waived by the defendant? It is admitted that this proviso has not been complied with, but it might be waived by the parties making the subscription. Have they waived compliance with or a performance of this condition? Waiver of a condition

[Livingston *v.* Pittsburgh and Steubenville R. R. Co.]

may be shown by evidence of an express agreement to waive its performance; or it may be shown by the acts of the parties amounting to an express waiver, and which would estop them from denying it, by acts which cannot be accounted for or explained, on any other hypothesis than that of a waiver. Where, for instance, there is a provision in a mortgage, that the principal debt shall become due and payable, if the interest is not paid as the instalments become due, or within a certain time thereafter, and there is a failure to pay the interest within the time specified, its subsequent receipt by the mortgagee, would amount to a waiver of the provision, and estop him from afterwards proceeding to collect the mortgage-debt, because the interest was paid within the time provided. The receipt of the interest, without objection, would be tantamount to an express waiver of the provisions. And so as respects the condition on which the subscription in this case was made; if the defendant and his deceased brother, expressly agreed to the route by which the road, instead of being located within half a mile, was laid out between three and four miles from the town of Florence, that would be a waiver of the condition. Or if, after the adoption of that route, and notice thereof, they continued to act as stockholders of the company, and to assert their rights as such in respect to the stock in controversy, they must be regarded as having waived the condition on which the subscription was made, and the defendant would be estopped from denying his liability therefor. The jury will determine from the evidence, whether the defendant and his brother, did or did not agree to the route adopted by the company, in May, 1842, or whether they continued afterwards to act as stockholders, with a full knowledge of the route which had been adopted, and did such acts as amount to a waiver of the condition, and estop the defendant from denying his liability.

" 3. There can be no recovery against the defendant in this case, unless the instalments demanded in this action were called in before suit was brought. If the instalments were called in by the directors before the bringing of this suit, then the action may be maintained, though notice thereof may not have been given. Were the instalments called in? The defendant contends that they were not, because no amount is specified in the resolutions as they appear on the minutes.

" I am not prepared to say that the resolutions ordering the call of instalments, constituted the only evidence of such call. Undoubtedly it is the duty of the directors to fix the amount of the respective instalments, and the time of their payment. But this may be shown, as I think, by evidence other than the resolutions of directors, recorded in the minutes of their proceedings. The fact of the call, the amount of the instalment, and

[Livingston v. Pittsburgh and Steubenville R. R. Co.]

the time of its payment, may be shown by any other evidence, which is sufficient to satisfy the minds of the jury that an instalment for a specified amount, payable at a specified time, was in fact called in. Public notice in the newspapers, published by the treasurer, under the authority of the directors, would be some evidence of the fact. The stock-books of the company in which the number and amount of the instalments are set down, would be evidence for the consideration of the jury. A payment on account of the instalment would be some evidence against the party paying, of an admission that a call had been made, and of notice thereof. As against a director of the company, the jury might be disposed to consider it sufficient notice. The first part of the defendant's sixth point is affirmed. The latter part is refused, for the reasons above given. Unless the instalments were actually called in by the directors before the bringing of this suit, the plaintiff cannot maintain this action, and in order to make the call valid under the provisions of the act, the amount of the instalment, and the time of its payment, must have been fixed and designated by the directors. But the minutes are not the only evidence of the fact. The jury will determine from all the evidence, whether the instalments were called in as required by law, before the institution of this suit.

"4. In order to recover the penalty of one per cent. per month, notice of the call must have been given, as required by law. If the calls were properly made, it is not denied that due notice thereof was given."

The jury found for plaintiff for $9,682.77; whereupon defendant sued out this writ of error.

*Williams* and *Sproul*, for plaintiff in error.

*Hamilton* and *Craft*, for defendant in error, referred to *Woodward* v. *Winship*, 12 Pick. 430; *Allen* v. *Rostain*, 11 S. & R. 375; *Jennings* v. *Este*, 4 Shep. 323; *Philadelphia and West Chester Railroad Company* v. *Hickman*, 4 Casey, 328; Greenleaf, § 169; 2 Sim. & Stu. 600-606; 3 Ans. 492; *Duvall* v. *Burbridge*, 6 W. & S. 530; *Bank of Pennsylvania* v. *Reid*, 1 Id. 106; *Allen* v. *Coit*, 6 Hill, 318; Pamph. L. 1856, p. 137; *Sinkler* v. *The Turnpike*, 3 P. R. 155; 16 S. & R. 147; 13 Id. 256; *Werkheiser* v. *Werkheiser*, 6 W. & S. 144; Collyer on Part. § 443; Montagu on Part. 49; 2 C. & M. 424; 1 Camp. 82; 22 Maine, 184; 3 M. & W. 128; 4 Sm. & Marsh. 739; 6 Louis. 684; 6 Humph. 51; 1 Collyer, § 443, note; 2 Monr. 130; *Kinley* v. *Hill*, 4 W. & S. 426; Greenl. Ev. §§ 27, 169, 208; *Lajoy* v. *Prenam*, 3 Miss. 529; 15 Wend. 502; 8 Id. 406; 9 Id. 209; 4 Pick. 97, 369; *Fulton Bank* v. *Canal Company*, 4 Paige, Ch. 129; 11 Johns. 100; 3 Younge & Jer. 80; Ang. & Ames on

Corp. § 432; 6 A. & E. 475; 2 P. & Dav. 296, 433; 9 A. & E. 439, 472; 17 Verm. 449; 9 Cow. 274; 4 Met. 384; 21 Conn. 451; 12 Barb. 128.

The opinion of the court was delivered by

WOODWARD, J.—As this was a suit against a surviving partner, it was necessary for the plaintiff to prove a joint contract.

And, inasmuch as the building of the plaintiff's railroad was not within the scope of partnership objects and purposes, one partner could not make himself the agent of the firm, for the purpose of subscribing to the stock of the company. Hence, it was necessary for the plaintiff to prove not only a subscription by one of the partners, but assent thereto by the others.

Assent, however, might be implied from circumstances, and the first question that arises is, whether the evidence which the learned judge submitted to the jury, was such as a jury might reasonably imply from it a subscription by Samuel, with the assent of Peter.

That Samuel subscribed in the name of the firm for 140 shares, was scarcely contested, and was conclusively proved by his report, as a commissioner to the governor, wherein the fact is set forth under his hand and seal.

The organization of the company, Samuel's active participation therein, the newspaper notices to stockholders, and the election of directors, were acts of public notoriety, which could scarcely escape the attention of Peter, while the payment of instalments out of partnership funds, could only have been made without his knowledge, by fraudulent practices, and such are not alleged.

From all this the jury might well imply assent, for if Peter had knowledge of the subscription, and of the payments thereon, and did not dissent, it was strong evidence of assent, which, if once given, either before or after the subscription, ratified it forever.

The evidence was submitted to the jury, in proper terms, by the judge. Because it tended to the conclusion sought to be established, it was competent and relevant, and it having convinced the jury, the defendant is bound to be satisfied.

Another ground of defence was, that the subscription was conditional.

But the court instructed the jury that the plaintiff could not recover, unless the condition had been complied with or waived. There was a prior question, whether the condition, written on the margin of the book, was there when the subscription was made, but this also was referred to the jury.

Of performance of the condition, there was no evidence; but of the waiver of it, the whole history of the case afforded pre-

sumptions of considerable strength. The evidence that tended to affect both brothers with a waiver, was fairly submitted to the jury.

And so in regard to the calls. They were published in a Pittsburgh paper. The Livingstons lived in Washington county, and counsel think the notice of calls was necessarily insufficient.

But the fact that payments were made under these calls, was strongly persuasive of actual notice, especially against a firm of two members, one of whom was acting as a director. The law did not require publication in the county where the parties resided. Actual notice was found by the jury, and the statutory rate of interest followed, as a matter of course.

On all the points stated by counsel, the instructions of the court seem to have been prudent and proper, and under them, the case became one peculiarly for the jury. They have decided it, and left very little for review in this court; nothing, indeed, that calls for a reversal of the judgment.

The judgment is affirmed.